### CONTINUATION IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent James Feasel, being first duly sworn, hereby depose and state as follows:

<u>INTRODUCTION AND AGENT BACKGROUND</u>

1.      I am a Special Agent with the Drug Enforcement Administration (DEA) currently assigned to the Grand Rapids District Office. I have been employed by the DEA since 2012. I am a federal law enforcement officer who is empowered to conduct investigations, execute warrants, and make arrests. During my career in the DEA, I have participated in over 50 investigations and search warrants. I have completed Special Agent training at the DEA Academy in Quantico, Virginia. I have been trained in the use of physical, electronic and human intelligence surveillance techniques, counter surveillance techniques, use of firearms, report and affidavit writing, execution of arrest and search warrants, court testimony and financial investigation techniques.

2.      I make this affidavit in support of an application for a search warrant for information that is stored at premises controlled by Google, a provider of electronic communications service and remote computing service headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Google to disclose to the government copies of the information further described in Attachment B.

3.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 United States Code, Section 2118 have

been committed by William ANTHONY and other individuals. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND RELATING TO GOOGLE AND RELEVANT TECHNOLOGY

6. Based on my training and experience, I know that cellular devices, such as mobile telephone(s), are wireless devices that enable their users to send or receive wire and/or electronic communications using the networks provided by cellular service providers. Using cellular networks, users of many cellular devices can send and receive communications over the Internet.

7. I also know that many devices, including but not limited to cellular devices, have the ability to connect to wireless Internet ("wi-fi") access points if the user enables wi-fi connectivity. These devices can, in such cases, enable their users to send or receive wire and/or electronic communications via the wi-fi network. A tablet such as an iPad is an example of a device that may not have cellular service but that could connect to the Internet via wi-fi. Wi-fi access points, such as those created through the use of a router and offered in places like homes, hotels, airports, and coffee shops, are identified by a service set identifier ("SSID") that functions as the name of the wi-fi network. In general, devices with wi-fi capability routinely scan their environment to determine what wi-fi access points are within range and will display the names of networks within range under the device's wi-fi settings.

8. Based on my training and experience, I also know that many devices, including many cellular and mobile devices, feature Bluetooth functionality. Bluetooth allows for short-range wireless connections between devices, such as between a device such as a cellular phone or tablet and Bluetooth-enabled headphones. Bluetooth uses radio waves to allow the devices to exchange information. When Bluetooth is enabled, a device routinely scans its environment to identify Bluetooth devices, which emit beacons that can be detected by devices within the Bluetooth device's transmission range, to which it might connect.

9. Based on my training and experience, I also know that many cellular devices, such as mobile telephones, include global positioning system ("GPS") technology. Using this technology, the device can determine its precise geographical coordinates. If permitted by the user, this information is often used by apps installed on a device as part of the apps' operation.

10. Based on my training and experience, I know that Google collects and retains location data from Android-enabled devices when a Google account user has enabled Google location services. Google can also collect location data from non-Android devices if the device is registered to a Google Account and the user has location services enabled.

11. Based on my training and experience, I know that Google offers numerous apps and online-based services, including messaging and calling (*e.g.,* Gmail, Hangouts, Duo, Voice), navigation (Maps), search engine (Google Search), and file creation, storage, and sharing (*e.g.*, Drive, Keep, Photos, and YouTube). Many of these services are accessible only to users who have signed in to their Google accounts. An individual can obtain a Google account by registering with Google, and the account identifier typically is in the form of a Gmail address (*e.g.*, example@gmail.com). Other services, such as Maps and YouTube, can be used with limited functionality without the user being signed in to a Google account.

12. Based on my training and experience, I also know Google offers an Internet browser known as Chrome that can be used on both computers and mobile devices. A user has the ability to sign-in to a Google account while using Chrome, which allows the user's bookmarks, browsing history, and other settings to be uploaded to Google and then synced across the various devices on which the subscriber may use the Chrome browsing software, although Chrome can also be used without signing into a Google account. Chrome is not limited to mobile devices running the Android operating system and can also be installed and used on Apple devices and Windows computers, among others.

13. Based on my training and experience, I know that, in the context of mobile devices, Google's cloud-based services can be accessed either via the device's Internet browser or via apps offered by Google that have been downloaded onto the device. Google apps exist for, and can be downloaded to, devices that do not run the Android operating system, such as Apple devices.

14. According to my training and experience, as well as open-source materials published by Google, I know that Google offers accountholders a service called "Location History," which authorizes Google, when certain prerequisites are satisfied, to collect and retain a record of the locations where Google calculated a device to be based on information transmitted to Google by the device. That Location History is stored on Google servers, and it is associated with the Google account that is associated with the device. Each accountholder may view their Location History and may delete all or part of it at any time.

15. Based on my training and experience, I know that the location information collected by Google is stored within an account's Location History and is derived from sources including GPS data, cellsite/tower information and Wi-Fi access points and Bluetooth beacons

within range of the device. Google uses this information to calculate the device's estimated latitude and longitude, which varies in its accuracy depending on the source of the data. Google records the margin of error for its calculation as to the location of a device as a meter radius, referred to by Google as a "maps display radius," for each latitude and longitude point. I know that Google uses this information for location-based advertising and location-based search results and stores such data in perpetuity unless it is manually deleted by the user.

16. Based on open-source materials published by Google and my training and experience, I know that Location History is not turned on by default. A Google accountholder must opt-in to Location History and must enable location reporting with respect to each specific device and application on which they use their Google account in order for that usage to be recorded in Location History. A Google accountholder can also prevent additional Location History records from being created at any time by turning off the Location History setting for their Google account or by disabling location reporting for a particular device or Google application. When Location History is enabled, however, Google collects and retains location data for each device with Location Services enabled, associates it with the relevant Google account, and then uses this information for various purposes, including to tailor search results based on the user's location, to determine the user's location when Google Maps is used, and to provide location-based advertising. As noted above, the Google accountholder also has the ability to view and, if desired, delete some or all Location History entries at any time by logging into their Google account or by enabling auto-deletion of their Location History records older than a set number of months.

17. Location data, such as the location data in the possession of Google in the form of its users' Location Histories, can assist in a criminal investigation in various ways. As relevant

here, I know based on my training and experience that Google has the ability to determine, based on location data collected and retained via the use of Google products as described above, devices that were likely in a particular geographic area during a particular time frame and to determine which Google account(s) those devices are associated with. Among other things, this information can indicate that a Google accountholder was near a given location at a time relevant to the criminal investigation by showing that his/her device reported being there.

18. Additionally, location information can be digitally integrated into image, video, or other computer files associated with a Google account and can indicate the geographic location of the account's user at a particular date and time (e.g., digital cameras, including on cellular telephones, frequently store GPS coordinates indicating where a photo was taken in the "metadata" of an image file).

19. Based on my training and experience, I know that when individuals register with Google for an account, Google asks subscribers to provide certain personal identifying information. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, this information often provide clues to their identity, location, or illicit activities.

20. Based on my training and experience, I also know that Google typically retains and can provide certain transactional information about the creation and use of each account on its system. This information can include the date on which the account was created, the length

of service, records of login (*i.e.,* session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, Google often has records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

21.     Based on my training and experience, I know that Google retains latitude and longitude points created through the use of Google related software and systems present on a user's cellular device. I know that Google retains location data as records associated with the travel of each cellular device for which Google based software and systems are used. Furthermore, this location data indicates the cellular device's points of travel with identified dates and times and can be associated with points of travel inside or outside of a geographical area for specified periods of time before and after traversing into or out of a geographical area.

PROBABLE CAUSE

22.     On July 14, 2020, at approximately 4:22 AM (EST), there was a burglary (*Incident #1*) at the Weatherwax Pharmacy located at 8012 Spring Arbor Road, Spring Arbor, MI. Jackson County Sheriff's Deputies determined that forced entry had occurred into the location and a number of controlled substances had been stolen. The Weatherwax Pharmacy conducted an inventory of the pharmacy and determined that the burglar(s) had stolen approximately 14 different types of controlled substances from the pharmacy, valued at approximately $9,787.

23.     On June 9, 2020, at approximately 3:36 AM (EST), there was a burglary (*Incident #2*) at the Galesburg Pharmacy located at 9880 East Michigan Avenue, Galesburg, MI. The Kalamazoo County Sheriff's Department responded to the Galesburg Pharmacy and determined that a forced entry had occurred at the Galesburg Pharmacy. The Galesburg Pharmacy subsequently conducted an inventory of the pharmacy and determined that the burglar(s) had stolen approximately 9 different types of controlled substances from the pharmacy, valued at approximately $1,172.

*24.*    On September 1, 2020, at approximately 6:10 AM (EST), there was a burglary (*Incident #3)* at the Medicine Tree Pharmacy located at 56109 Village Center Circle, Mattawan, MI, but no controlled substances were stolen.  Surveillance footage revealed that the perpetrators entered the building and attempted to open a roll-down door inside the pharmacy where the controlled substances in the pharmacy are kept, but were unsuccessful. The perpetrators did take items from behind the counter including the cash from a cash register.

25.     On July 1, 2020, at approximately 5:35 AM (EST), there was a burglary (*Incident #4)* at the Central Pharmacy located at 3955 Patient Care Drive, Lansing, MI.  Two individuals wearing masks and gloves used a crowbar to force entry. The perpetrators attempted to steal a safe containing numerous Schedule II controlled substances but were unsuccessful. Approximately five different Schedule IV and V controlled substances in varying dosages were stolen from the pharmacy.

26.     The same Central Pharmacy location was burgled (*Incident #5)* on September 15, 2020, at approximately 5:34 AM (EST). Two individuals wearing facial coverings and gloves used crow bars to force entry. Approximately 12 different Schedule III, IV and V

controlled substances of varying dosage totaling a monetary value of approximately $4,350 were stolen from the pharmacy.

27. On August 10, 2020, at approximately 5:57 AM (EST), there was a burglary (*Incident #6*) at the Community Pharmacy located at 1212 Johnson Avenue, Bridgeport, WV. Upon arrival, officers determined that a forced entry had occurred at the pharmacy. The pharmacy conducted an inventory and determined that the burglar(s) had stolen 20 different types of controlled substances from the pharmacy valued at $10,958.13.

28. On July 23, 2020, at approximately 5:20 AM (CST), there was a burglary (*Incident #7*) at MercyOne Ankeny Pharmacy in Ankeny, IA. Two different types of controlled substances were stolen, including 3 ml of Fentanyl ampule injections at an approximate value of $75.

29. On July 24, 2020, at approximately 5:30 AM (CST), there was a burglary (*Incident #8)* at the Blairs Ferry Family Pharmacy in Hiawatha, IA. An inventory revealed that approximately 8 different types of controlled substances had been stolen at a value of approximately $5,000.

30. On December 24, 2020, at approximately 6:42 AM (EST), there was a burglary (*Incident #9*) at the Georgetown Apothecary, 1002 South Broadway Street, Georgetown, KY. Georgetown Police Department responded to the Georgetown Apothecary and determined that a forced entry had occurred at the Pharmacy. The Georgetown Apothecary subsequently conducted an inventory of the pharmacy and determined that the burglar(s) had stolen approximately 4 different types of controlled substances from the pharmacy.

31. Investigators submitted geo-fence search warrants to Google LLC for the dates, times, and locations of each of the noted pharmacy burglaries. Google returns indicated that in

each of the noted pharmacy burglaries, the same google device was present: Google Account ID: 795652151489, subscriber name William ANTHONY and email address: willantjobs@gmail.com.

32. On or about July 14, 2021, William ANTHONY, Keonta ANTHONY, Dajohn DAVIS, and William BEAUCHAMP were indicted in the Western District of Michigan for Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 846 and Conspiracy to Commit Burglary Involving Controlled Substances, in violation of 18 U.S.C. § 2118(d).

## CONCLUSION

33. Based on the common Google Device ID found during the dates and times of the aforementioned pharmacy burglaries, I believe that William ANTHONY was involved in the pharmacy burglaries described above.

34. The location data requested in Attachments A and B will assist investigators by tracking the geolocation information associated with William ANTHONY's Google account in the time immediately before and after each burglary.

35. Because the warrant will be served on Google who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.